**TELEREP CARIBE, INC., Jerome Forsythe, Plaintiffs**

v.

**Otto ZAMBRANO, et. al Defendants**

**No. CIV 00–2586 HL JA.**

United States District Court, D. Puerto Rico.

May 17, 2001.

---

Rosa M. Cruz–Niemiec, San Juan, PR, Luis E. Vazquez–Rodriguez, San Juan, PR, for plaintiffs.

Vilma M. Dapena–Rodriguez, Bayamon, PR, for defendants.

## OPINION AND ORDER

ARENAS, United States Magistrate Judge.

On December 19, 2000, TeleRep Caribe, Inc., and Jerome Forsyth (collectively "plaintiff" and/or "TeleRep Caribe") filed a complaint against Otto Zambrano, OMZ International Importers, A, B, C & D Companies (collectively "defendant" and/or "Zambrano"), alleging, *inter alia*, trademark violation, unfair competition, and copyright violation. (*See* Docket No. 1.) Appurtenant to the complaint, plaintiff requested the issuance of a preliminary injunction enjoining defendant from selling and distributing prepaid calling cards that are almost identical to those of plaintiff. *See id.* This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1338(b) and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a).

Plaintiff's complaint states that since December 1998, TeleRep Caribe had been the exclusive distributor of TeleRep CCC Inc.'s prepaid calling cards in Puerto Rico. TeleRep Caribe's president, Mr. Jerome Forsyth, prepared a customized prepaid calling card for each of its customers, including a specific art work for each client, along with a photograph of the client's business. Sometime in 1999, Otto Zambrano began working for TeleRep Caribe to assist with the delivery of its customized prepaid calling cards and in taking purchase orders from TeleRep Caribe's customers, but ceased working there in June, 2000. At about that same time, TeleRep CCC ended its relationship with TeleRep Caribe and entered into a distributorship relationship with Otto Zambrano.

Plaintiff filed two complaints in August, 2000, one against defendant Otto Zambrano for tortious interference and another against TeleRep CCC for termination of the distributorship relationship. *See TeleRep Caribe v. TeleRep CCC,* Civil No. 00–2008(JAG) and *TeleRep Caribe and Mr. Jerome Forsyth v. Otto Zambrano, OMZ International Importers,* Civil No. KAC 00–4419 (filed before the Puerto Rico Superior Court). On September 20, 2000, the Superior Court of Puerto Rico issued an order instructing Otto Zambrano not to interfere with TeleRep Caribe's clients in Puerto Rico. On October 17, 2000, plaintiff and TeleRep CCC entered into a settlement agreement reinstating TeleRep Caribe as the exclusive distributor for TeleRep CCC pursuant to which plaintiff voluntarily dismissed both pending complaints. In the complaint before the court, plaintiff alleges that the defendant's acts[1] have caused plaintiff significant harm and seeks damages in an amount of not less than $250,000. Plaintiff alleges further that the defendant's conduct results in irreparable harm to TeleRep Caribe's goodwill and business reputation. The defendant, on the other hand, alleges that plaintiff's works are not valid trademarks and even if they were, the works are works made for hire. (*See* Docket No. 14.) Thus, the real owners of the works are the customers, not the plaintiff, and therefore, there is no likelihood of confusion of the public. Finally, the defendant alleges that in relation to

---

1. Plaintiff alleges that the defendant has engaged in trademark and copyright infringement and unfair trade practices and competition by means of purchasing its customized prepaid calling cards and sending them to a third party for copying and printing.

the copyright claim, there is no valid copyright because the First Circuit has decided that to state a claim under the Copyright Law the plaintiff must produce the certificate of copyright issued by the United States Copyright Office.

An evidentiary hearing on the motion for preliminary injunction was held on January 31, 2001. Jerome Forsyth testified on behalf of plaintiffs. Argument was heard from both parties.

On February 1, 2001, the defendant filed a motion to dismiss the copyright claim since a certificate of copyright had not been obtained from the United States Copyright Office, and possession of the copyright registration is a prerequisite to an action for infringement. (Docket No. 9.) The answer to the complaint was also filed on that date. Plaintiff filed a post-hearing memorandum of law on March 9, 2001 (Docket No. 16) and the defendant filed an opposition on April 10, 2001. (Docket No. 21.) Plaintiff filed an opposition to defendant's memorandum of law on April 18, 2001. (Docket No. 23.)

## PRELIMINARY INJUNCTION

The First Circuit uses a quadripartite test for determining whether litigants are entitled to preliminary injunction redress. Under this framework, trial courts must consider (1) the likelihood of plaintiff's success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect the court's ruling will have on the public interest. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996) (citing *Weaver v. Henderson,* 984 F.2d 11, 12 n. 3 (1st Cir.

1993); *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991)); *see also Ocean Spray Cranberries, Inc. v. PepsiCo, Inc.,* 160 F.3d 58, 60–61 (1st Cir.1998); *DeNovellis v. Shalala,* 135 F.3d 58, 62 (1st Cir.1998); *Starlight Sugar, Inc. v. Soto,* 114 F.3d 330, 331 (1st Cir.1997); *Planned Parenthood League of Mass. v. Bellotti,* 641 F.2d 1006, 1008–09 (1st Cir.1981).

A. Likelihood of Plaintiff's Success on the Theories of Trademark, Unfair Competition and Copyright Infringement.

At the stage of preliminary injunction, a trial court need not predict the eventual outcome of the case with absolute assurance, but rather make a statement as to the probable outcome of the case. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d at 16; *Narragansett Indian Tribe v. Guilbert,* 934 F.2d at 6. With this standard in mind, I consider each of plaintiff's claims in terms of probable success on the merits.

1. Trademark/Trade Dress

■ TeleRep Caribe contends that it has been using its mark since 1999 and thus, it is the owner of the mark. The mark consists of customized prepaid calling cards featuring a specific art work comprised of a photographic image, along with words, phrases, and slogans for each client. TeleRep Caribe also states that Otto Zambrano copied its works and thus, infringed its right to the mark. Otto Zambrano denies infringement on the grounds that the specific art work is not unique and can not be considered a mark affording protection for the plaintiff.

This is in part a trademark infringement and unfair competition action under Section 32 of the Lanham Act, 15 U.S.C. § 1114.[2] "The purpose of trademark laws

---

**2.** The trademark infringement provision is

section 1114 and provides in pertinent part:

is to prevent the use of the same or similar marks in a way that confuses the public about the actual source of the goods or services." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir.1998) (citing *Star Fin. Servs., Inc. v. Aastar Mortgage Corp.*, 89 F.3d 5, 9 (1st Cir. 1996)). The rights to a trademark[3] are acquired by use and not by registration; however, registration is *prima facie* evidence of the validity of and the rights to such registered mark. *Veryfine Prods., Inc. v. Colón Bros., Inc.*, 799 F.Supp. 240, 250 (D.P.R.1992).

The breadth of the confusion-producing elements actionable under section 15 U.S.C. § 1125(a) has been held to embrace not just word marks and symbol marks, but also "trade dress," a category which includes, not only the packaging or "dress-ing" of a product, but also the product's design. *See Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Trade dress "has been defined as 'the design and appearance of [a] product together with the elements making up the overall image that serves to identify the product presented to the consumer'." *Chrysler Corp. v. Silva*, 118 F.3d 56, 58 (1st Cir.1997) (citations omitted). In short, Section 43(a) of the Lanham Act, gives a person a claim for the use by any other person of any word, term, name, symbol, device, or any combination thereof which is likely to cause confusion among the consumers as to the origin, sponsorship, or approval of the goods. 15 U.S.C. § 1125(a)(1)(A).

Plaintiff testified that its mark is a trade dress.[4] (*See* Docket No. 14 at 66.) To be

---

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any ... colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services ... which such is likely to cause confusion, or to cause mistake, or to deceive;

.    .    .    .    .

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Title 15 U.S.C. § 1114(1)(a).

The unfair competition provision is Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1) and provides in relevant part:

(1) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ...

.    .    .    .    .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. Title 15 U.S.C. § 1125(a)(1)(A).

**3.** The term "trademark" includes any word, word, name, symbol, or device, or any combination thereof—

(1) used by a person, or

(2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,

to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown. Titles, character names, and other distinctive features of radio or television programs may be registered as service marks notwithstanding that they, or the programs, may advertise the goods of the sponsor. Title 15 U.S.C.A. § 1127.

**4.** Trade dress includes the "design and appearance of [a] product together with the elements making up the overall image that serves to identify the product presented to the

protected under the Lanham Act, a trademark or trade dress must not be functional.[5] *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d at 36 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 775, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)). Plaintiff must prove that its design has acquired a secondary meaning[6] or that it is inherently distinctive,[7] and that there is a likelihood that prospective purchasers will be confused as to the source of the product. *TEC Eng'g Corp. v. Budget Molders Supply, Inc.,* 82 F.3d 542, 545 (1st Cir.1996) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. at 769, 112 S.Ct. 2753). *See Romm Art Creations Ltd. v. Simcha Int'l, Inc.,* 786 F.Supp. 1126 (E.D.N.Y.1992) (discusses a claim of infringement of the trade dress of commercial reproduction of particular art work).

The degree of protection afforded under the Lanham Act is largely determined by the distinctiveness of the trade dress. *Id.* at 1136. Distinctiveness has been held to be an "explicit prerequisite for registration of trade dress under § 2 and 'the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a).'" *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. at 210, 120 S.Ct. 1339 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. at 768, 112 S.Ct. 2753). Arbitrary and fanciful marks are not required in order to show secondary meaning. *Id.* 768, 112 S.Ct. 2753. A descriptive mark,[8] on the other hand, needs to prove secondary meaning to be protected under the Lanham Act. *See Wiley v. American Greetings Corp.,* 762 F.2d at 140. The "purpose of the Lanham Act in this context is to protect a creative artist's rights in his or her creation and thus provide incentive to be creative." *Romm Art Creations Ltd. v. Simcha Int'l, Inc.,* 786 F.Supp. at 1135 (citing *Hartford House Ltd. v. Hallmark Cards Inc.,* 647 F.Supp. 1533, 1540 (D.Colo.1986), *aff'd,* 846 F.2d 1268 (10th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct.

consumer." *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d at 35 (citing *Chrysler Corp. v. Silva,* 118 F.3d at 58) (quoting *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 999 (2nd Cir.1997)).

5. A functional product feature is one that "is essential to the use or purpose of the article or [that] ... affects the cost or quality of the article." *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d at 37 (quoting *Inwood Lab., Inc. v. Ives Lab., Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)).

6. Descriptive marks receive protection only if secondary meaning is shown. *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d at 39. "To establish secondary meaning, a manufacture must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Id.* at 41–42.

7. A design is "inherently distinctive" if it is fanciful or arbitrary. "A 'fanciful' mark is a word or symbol 'which is coined for the express purpose of functioning as a trademark ... [or] any obscure or archaic term not familiar to buyers.'" *Wiley v. American Greetings Corp.,* 762 F.2d 139, 141 n. 1 (1st Cir.1985) (citing J. McCarthy, *Trademarks and Unfair Competition* § 11:2, at 346 (1973)) (now 2 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed.1996)). "'Arbitrary' marks are 'words, symbols, pictures, etc., which are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services.'" *Id.* at 141 n. 2 (citing McCarthy, § 11:4, at 350 (footnote omitted.))

8. "A mark is 'descriptive' if it is descriptive of: the intended purpose, function or use of the goods; of the size of the goods, of the class of users of the goods, of a desirable characteristic of the goods, or of the end effect upon the user." *Wiley v. American Greetings Corp.,* 762 F.2d at 141 n. 3 (citing McCarthy, § 11:5, at 353 (footnotes omitted)).

260, 102 L.Ed.2d 248 (1988)).[9]

In the instant case, the art work consists of customized prepaid calling cards featuring a specific art work comprised of a photographic image along with words, phrases, and slogans for each client. A photograph can be a work of art. *See Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 59, 4 S.Ct. 279, 28 L.Ed. 349 (1884). It is an art form that may require a significant amount of skill. *Núñez v. Caribbean Int'l News Corp.,* 235 F.3d 18, 23 (1st Cir.2000). At times, the person has to use creativity to arrange and select the positions, lights and shades, and angles to take the picture. *Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. at 59, 4 S.Ct. 279. Although photographs are not within the scope of trademark subject matter, plaintiff argues that an art work can be determined to be a trade dress under the trademark law. (*See* Docket No. 14.)

In this case, TeleRep Caribe's prepaid long distance calling cards were presented for the market as customized calling cards. The photos and the logo included in the cards are their trade dress. Hence, I must analyze if the "overall image" of TeleRep Caribe's cards, including the photographs and logos, is or is not "functional" and if defendant's use is likely to cause confusion with the product for which protection is sought. I find that they are not functional and that their use by the defendant is likely to cause confusion.

### (a) *Functionality*

The "overall image" or customizing of the cards is nonfunctional. This feature, while determinative as to the source of the product, is not essential to its use or purpose nor does it affect its cost or quality.

The prepaid customized long distance calling cards sold by TeleRep Caribe can be used irrespectively of their customizing. There is no evidence that the cost and quality of the long distance calls will be affected by the cards' customizing. Hence, TeleRep Caribe has complied with the first prong in this analysis.

### (b) *Secondary meaning*

There are several factors to prove secondary meaning, including the "length or exclusivity of use of the mark, the size or prominence of [plaintiff's] enterprise, the existence of substantial advertising the product's established place in the market, and [p]roff of intentional copying." *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d at 41. Plaintiff proved the intentional copying with Mr. Zambrano's previous tortious interference complaints, and the exclusivity to use the mark because TeleRep is the exclusive distributor of this kind of prepaid card. However, there is no evidence proving the size of TeleRep enterprises and the existence of substantial advertising. There is no evidence proving how famous the mark is nor if customers associate the prepaid card in question with TeleRep as the source.

### (c) *Likelihood of confusion*

■ There are eight factors to determine the likelihood of confusion: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the similarity of the goods; (4) the relationship between the parties' channels of trade; (5) the relationship of the parties' advertising; (6) the classes of prospective purchasers;[10] (7) the evidence of

---

**9.** In *Hartford,* the court granted protection to plaintiff determining that art work such as limited edition posters, were within the scope

of trademark under Section 1125(a) of the Lanham Act.

**10.** Factors 3, 4, and 5, are treated together. This has become a practice in this circuit.

actual confusion; and (8) the defendant's intent in adopting its mark. *Veryfine Prods., Inc. v. Colón Bros.*, 799 F.Supp. at 251. Although this is a case of first impression,[11] there are trademark cases that examine the similitude of products in the context of trademark law. Applying the relevant parts of the eight part test, the court in *Polo Fashions, Inc. v. Fernández* found that the defendant's use of an almost identical "APOLO" logo, use of a larger type for the work "APOLO," than for the phrase "by Ralph Lauren," similar contrast of label colors, and use of polo player symbol embroidered on defendant's finished product did promote confusion and supported plaintiff's trademark infringement claim. *Polo Fashions, Inc. v. Fernández*, 655 F.Supp. 664, 667 (D.P.R.1987). Using the same test, the court in *Veryfine Prod., Inc. v. Colón Bros.* considered all of the similarities between the plaintiff's and defendant's products, and stated that the overall appearance and likeness of the products was so striking that it appeared that the defendant used a colorable imitation of plaintiff's name and mark. *Veryfine Prods., Inc. v. Colón Bros.*, 799 F.Supp. at 252. In *Veryfine Prods., Inc. v. Colón Bros.*, each party's design presented a two-dimensional section of fruit, similar or identical bright pastel coloring against a white background, and similarly configured placement of label markings (name, legal copy, ingredient content, etc.).

Applying the eight factors to the instance case, I must determine on the whole whether there is any genuine issue as to likelihood of confusion. All factors must be considered although no one factor is necessarily determinative. *Boston Ath-*

letic *Ass'n v. Sullivan*, 867 F.2d at 29 (citing *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir.1983)).

(1) *Strength of mark.* TeleRep Caribe seeks protection not for a mark but for the trade dress of its prepaid customized long distance calling cards. While no evidence was presented as to the strength of TeleRep Caribe's trade dress in the Puerto Rico market, evidence was presented about the fact that the only customized prepaid calling long distance cards in the Puerto Rico market were the ones sold by TeleRep Caribe. This fact together with the fact that TeleRep Caribe and the defendant targeted the same customers and trade channels counsel persuasively toward a realistic possibility of confusion.

(2) *Similarity of the mark.* "[S]imilarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features." *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d at 487 (citing *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980)). One prepaid card is distributed by OMZ International Importers, and the other is distributed by TeleRep Caribe. Although the name of the distributors are different, the product which is prepaid cards is basically the same. This might constitute likelihood of confusion of the consumer because the evidence shows that Mr. Zambrano worked for TeleRep. Consumers will surely be confused as to the source and will probably believe that the source is the same or perhaps that both

---

*Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 3 n. 3 (1st Cir.1993) (citing *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 30 (1st Cir.1989); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir. 1987); *Pignons S.A. de Mecanique de Preci-*

sion *v. Polaroid Corp.*, 657 F.2d 482, 488 (1st Cir.1981)).

**11.** There are no trademark cases concerning prepaid calling cards.

distributors are related, for example, that one sponsors the other.[12]

(3) *Similarity of the goods.* A mere comparison of plaintiff's and defendant's products reveals a high degree of similitude between the two prepaid calling cards. In fact, the overall appearance of the products is remarkable, with a likeness so striking that it is apparent that defendant's product is using a photocopy of the image used in plaintiff's prepaid calling card, that is, the same art work, colors, sizes, materials, letter, drawings, carriers, and logos. Thus, "[u]nder this factor, there is a strong likelihood of confusion." *Boston Athletic Ass'n v. Sullivan,* 867 F.2d at 30 (citing *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d at 818 (both parties were in the business of automobile sales and service), compare with *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.,* 718 F.2d at 1205–06 (plaintiff sold a local anesthetic while defendant sold a blood analyzer) and *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d at 487–88 (plaintiff sold an expensive, high quality camera while defendant sold a relatively inexpensive instant camera)).

The photocopy that defendant uses is not a high grade resolution, and the layout of customer advertisements is similar to those used by plaintiff in terms of the size, font, and placement of words and phrases. There are few—very slight—differences from TeleRep Caribe's product, but these are, at best, trivial, and do not amount to a material alteration clearly distinguishing

Zambrano's prepaid calling cards.[13] Defendant's product is simply an imitation of plaintiff's name and dress as applied to the same goods used in interstate commerce. Here, testimony and evidence indicate that the product similarity is such that it could not have resulted from happenstance, given that the defendant had previously been employed by plaintiff.

(4) *Relationship Between the Parties' Channel of Trade;* (5) *Relationship Between the Parties' Advertising;* (6) *Classes of Prospective Purchasers.* The First Circuit treats these factors simultaneously. Otto Zambrano used the same channels of trade, the same customer base, advertised in the same media, aimed at similar consumers and, at one point, replaced plaintiff in an exclusive distributorship agreement with TeleRep CCC, leading me to believe that Otto Zambrano adopted the marks with the intent to benefit from TeleRep Caribe's success.

(5) *Evidence of actual confusion.* During the injunction hearing, Mr. Jerome Forsyth, TeleRep Caribe's owner, testified that he has had many complaints about customers being confused as to why the defendant continued to offer them the same product. He also testified that there were customers that complained to him about orders placed with the defendant because they were under the false impression that the orders had been placed for TeleRep Caribe's product. TeleRep Caribe's customers even complained about the deterioration in service, evidently believing

12.  Plaintiff presented some direct evidence of confusion in the market place during the evidentiary hearing.

13.  The differences between both products are the following: OMZ International Importers's prepaid card is blurred and prepaid cards values are not stamped in the art work. On the back of the OMZ International Importers prepaid card, instructions are in Spanish and

English and there is also an expiration date. On the other hand, TeleRep Caribe prepaid cards differ from OMZ International Importers' in the following: the card is brighter and has the value and the name of the company stamped. On the back of the prepaid card it says "Instructions" in capital letters, and it has a bar with the minutes available for use.

that TeleRep Caribe was the source of the product. *See* Docket No. 14, Hearing Transcript at 14, 17 and 38. This evidence is uncontested.

The evidence of actual confusion presented combined with the fact that the cards sold by the defendant were virtually identical to TeleRep Caribe's cards, sufficiently show a likelihood of confusion among the customers.

(6) *The defendant's intent in adopting its mark.* This is the most clear of all factors. The defendant's behavior and conduct suggest that he wanted to interfere with TeleRep's prepaid cards customers and market. Most importantly, this factor suggests likelihood of confusion because defendant Otto Zambrano had previously been employed by plaintiff. Thus, these actions make it apparent that the defendant tried to benefit from TeleRep's reputation.

All things considered, I.find that there is likelihood of confusion between the two products. Moreover, I find that plaintiff's trademark infringement claim against defendant, would likely result in a decision in favor of TeleRep Caribe on the merits of its claim for trademark infringement and dilution of the mark.[14]

## 2. Unfair Competition

TeleRep Caribe asserts in its Second Cause of Action (*see* Docket No. 1) that Zambrano's actions constitute unfair trade practices and unfair competition pursuant to Section 43 of the Lanham Act, 15 U.S.C. § 1125. Under this section, actions must be based on the use of a mark in interstate commerce which is likely to cause confusion or to deceive purchasers concerning the source of goods. *Quincy Cablesys-*

*tems, Inc. v. Sully's Bar, Inc.*, 650 F.Supp. 838, 845 (D.Mass.1986).

In relation to likelihood of confusion under unfair competition statutes, the same facts supporting a charge of trademark infringement support an unfair competition cause of action. *Veryfine Prods., Inc. v. Colón Bros.*, 799 F.Supp. at 256. The third requirement to establish a trade dress infringement (likelihood of confusion) under the Section 43 of the Lanham Act has been discussed. Plaintiff argues that defendant's acts and omissions are the proximate cause of irreparable damage to TeleRep Caribe and will cause further irreparable injury unless enjoined from actively promoting and selling its product.

One endeavoring to break into a market and rival its competitor has a duty to select a mark which is sufficiently distinct to avoid all possible likelihood of confusion. *See Polo Fashions, Inc. v. Fernández*, 655 F.Supp. at 667. As stated previously, Otto Zambrano was plaintiff's agent, having had the responsibility for assisting plaintiff in distribution of plaintiff's prepaid calling card. He therefore had both access and opportunity to appropriate plaintiff's mark, and he was placed on constructive and actual notice that the mark was in use by TeleRep Caribe.

Plaintiff Forsythe alleges that on November 10, 2000, while visiting a customer, he found that Otto Zambrano was selling customized prepaid calling cards identical to the ones created by TeleRep Caribe. (*See* Exhibits A and B.) Three days later on November 13, 2000, TeleRep Caribe asked Otto Zambrano to cease and desist from selling his products bearing the likeness of plaintiff's products. Defendant

---

**14.** Once a court finds that adoption of a similar mark will cause confusion, it logically follows that it is also, in itself, an infringement of the mark. *Polo Fashions, Inc. v.*

*Fernández*, 655 F.Supp. at 667 (citing *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980)).

Otto Zambrano refused to withdraw his products from the market and has not redesigned his cards. In so doing, along with the above-mentioned facts, his conduct supports plaintiff's contention of unfair competition.

### 3. Copyright.

■ TeleRep Caribe filed an application for copyright registration pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*, with the Copyright Office on December 10, 2000. (*See* Exhibit C.) Plaintiff claims that Zambrano violated the above-listed Acts through its acts and omissions, in violation of its exclusive rights as owner of the copyrights of the photographs and art work included in its prepaid calling cards and seeks an award of damages pursuant to 17 U.S.C. § 504 and § 505. (*See* Docket No. 1, ¶ 45.) Plaintiff claims that filing an application is sufficient to show ownership of a valid copyright. (*See* Docket No. 1, ¶ 41.) At the hearing, the defendant then correctly challenged plaintiff's right to assert a cause of action for copyright infringement.

The First Circuit has determined that in order to establish copyright infringement, plaintiff must first prove ownership of a valid copyright, *see Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 605 (1st Cir.1988); second, the work when viewed as a whole must be original; and third, plaintiff must have complied with the requisite statutory formalities. *Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc.*, 119 F.3d 55, 59 (1st Cir.1997) (citing *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir.1995), *aff'd by an equally divided court*, 516 U.S. 233, 116 S.Ct. 804, 133 L.Ed.2d 610 (1996)). At the time of filing the complaint alleging copyright infringement, plaintiff was not in receipt of a copyright certificate issued by the United States Copyright Office. "In judicial proceedings, a certificate of copyright registration constitutes *prima facie* evidence of copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid." *Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc.*, 119 F.3d at 59 (citing *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir.1990)); *see also* 17 U.S.C. § 401(c); *CMM Cable Rep, Inc. v. Ocean Coast Prop. Inc.*, 97 F.3d 1504, 1513 (1st Cir.1996)

Although copyright registration in general is "permissible" and such registration is not a condition of copyright protection when plaintiff establishes an infringement action, plaintiff must register the copyright before the infringement action is instituted. 17 U.S.C.A. § 408(a), § 411(a). This evidence has subsequently been presented to reflect registration of copyright prior to the commencement of this action. (Docket No. 17.) Plaintiff has therefore complied with the requisite statutory formalities.

The Court of Appeals for the First Circuit has granted injunctive relief when the elements of trademark infringement and unfair trade practices have been set forth by the plaintiff. *Veryfine Prods., Inc. v. Colón Bros.*, 799 F.Supp. at 257 (citing *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215 (1st Cir.1989)); *see also Boston Athletic Ass'n v. Sullivan*, 867 F.2d at 35. Having considered the evidence presented, I find that plaintiff is likely to prevail on the merits of its claims for trademark infringement, unfair competition, and copyright infringement.

### B. Potential for Irreparable Harm if the Injunction is Denied

■ The second prong in the preliminary injunction analysis requires the court to assess the potential irreparable harm to the movant should the injunction be denied. An injury will only be considered

irreparable if no adequate remedy for the injury exists at law. *See Foxboro Co. v. Arabian Am. Oil Co.,* 805 F.2d 34, 36 (1st Cir.1986); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1, at 149–51 (2d ed.1995). Monetary damages are generally not considered irreparable injuries. *See DeNovellis v. Shalala,* 135 F.3d at 64 ("[A] temporary loss of income which may be recovered later does not usually constitute irreparable injury."). It is not necessary for plaintiff to establish that denial of injunctive relief would be fatal to its business; it is sufficient for plaintiff to show that injury is not accurately measurable, given that irreparable harm is a natural sequel. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d at 16 (citing e.g., *K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 915 (1st Cir.1989)). Evaluating irreparable harm and its likelihood of success on the merits must be considered together. The greater the likelihood of success on the merits, the less required showing of irreparable harm. When the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief. *E.E.O.C. v. Astra U.S.A., Inc.,* 94 F.3d 738, 743 (1st Cir.1996).

TeleRep Caribe has made a requisite showing that without the preliminary injunction it would lose incalculable revenues and sustain harm to its goodwill. *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d at 19. TeleRep Caribe has demonstrated the resultant damage thus far that Zambrano has sold its product to TeleRep Caribe's customers. The incalculable damage is lost revenues, harm to TeleRep Caribe's reputation, and alienation of future customers. "By its very nature injury to goodwill and reputation is not easily measured or fully compensable

in damages." *Id.* at 20 (citing *K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d at 915).

Zambrano has encroached upon TeleRep Caribe's customer base. A denial of preliminary injunction would effectively give defendant the continued opportunity to use plaintiff's customer base to sell his version of plaintiff's product. In turn, this will likely prevent plaintiff from supplying its product to its own customers and would cause substantial, albeit immeasurable, damage to the goodwill that TeleRep Caribe has created since its inception. *Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d at 20 (citing *Leone v. Town of New Shoreham,* 534 A.2d 871, 874 (R.I.1987)) (holding that inability to serve returning customers constitutes irreparable harm). Indeed, Zambrano's product has been sold by plaintiff's customers. (*See* Docket No. 1, at 4, ¶ 15.) Accordingly, I find that TeleRep Caribe would be subjected to irreparable harm if the preliminary injunction is denied.

C.  Balance of Relative Impositions

■ Weighing the hardships of each party is a fact-driven exercise. TeleRep Caribe is a corporation engaged in the business of customized long distance prepaid calling cards in Puerto Rico. Otto Zambrano, on the other hand, is a diversified distributor, selling different goods, including beds, saunas, purifying air machines, hammocks, vacuum cleaners, leather products, and long distance prepaid calling cards in Puerto Rico. The balance of equities in this situation favors TeleRep Caribe because, unless enjoined, Zambrano will continue to take advantage of the success of TeleRep Caribe. Under these circumstances, it is clear that the injury suffered by plaintiff outweighs any harm which Zambrano may sustain in being unable to continue marketing its prepaid calling cards.

To illustrate, if Zambrano is not enjoined, TeleRep Caribe will have to undergo the labor, creative thought and expense of redesigning its prepaid calling cards to distinguish its product from Zambrano's product, but at the risk that it could be photocopied and undersold. TeleRep Caribe can return to its customer base, but may find that it is unable to serve returning customers. In this scenario, the court enables Otto Zambrano to reap the benefits of TeleRep Caribe's work. On the other hand, TeleRep Caribe must assume both calculable and incalculable costs (rebuilding its reputation, offsetting the damage caused by arguably unfair competition) while protecting its niche in the market of prepaid calling cards. In deciding that the balance favors plaintiff, I have considered that the nature and degree of harm TeleRep Caribe would have as irreparable if interim injunctive relief were withheld.

### D. Effect on the Public Interest

The public policy behind the Lanham Act is to prevent the public from encountering confusion, mistake and deception in purchase of spurious goods. Simply stated, consumer confusion is contrary to the public interest. Traditional trademark and trade dress law, encourages production of products of high quality "and simultaneously discourages those who hope to sell inferior products by capitalizing on a consumer's inability quickly to evaluate the quality of an item offered for sale." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d at 36 (citing *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995)). More importantly trademark and trade dress protection serves to protect the trade dress owner and the public by avoiding confusion or mistake. *Id.* This case presents a tension in free enterprise, between its limitation and promotion. The evidence has convinced me that Otto Zambrano will-fully infringed upon TeleRep Caribe's trade dress and that it along with the public have suffered damages as a result. Thus the request for injunctive relief is **GRANTED.**

Trial is set for July 31, 2001 at 9:30 a.m.

SO ORDERED.