**TOTAL PETROLEUM PUERTO RICO CORPORATION, Plaintiff,**

v.

**Marisely COLON–COLON, Luis F. Colon, Conjugal Partnership Colon–Colon, Defendants.**

**Civil No. 08–1629 (FAB–JA).**

United States District Court, D. Puerto Rico.

Aug. 29, 2008.

Ivan Aponte–Figueroa, Denise Rodriguez–Flores, Sepulvado & Associates, PSC, Carla Ferrari–Lugo, Ramos Diaz, Acevedo & Gonzalez CSP, San Juan, PR, for Plaintiff.

Lemuel Negron–Colon, Ponce, PR, for Defendants.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

A district court may refer pending dispositive motions to a magistrate judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Rule 72(a). Any party adversely affected by the report and recommendation may file written objections within ten days of being served with the magistrate judge's report. *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (*citing United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Failure to comply with this rule precludes further review. *See Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992). In conducting its review, the court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." 28 U.S.C. § 636(a)(b)(1). *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.,* 286 F.Supp.2d 144, 146 (D.P.R.2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. *See Hernandez–Mejias v. General Elec.,* 428 F.Supp.2d 4, 6 (D.P.R.2005) (*citing LaCedra v. Donald W. Wyatt Detention Facility,* 334 F.Supp.2d 114, 125–126 (D.R.I. 2004)).

On May 23, 2008, United States Magistrate Judge Justo Arenas issued a Report and Recommendation recommending that the court grant plaintiff's motion for the issuance of a preliminary injunction (Docket No. 32). The magistrate judge's Report and Recommendation contained a warning that written objections must specifically identify that portion of the recommendation or report to which objection is made and the basis for such objections. (*Id.* p. 32)

On August 5, 2008, defendants filed an "Objection to Magistrate Judge's Report and Recommendation" (Docket No. 35). In the four pages of the objection, devoid of any **specific objection or analysis** to any part of the Report and Recommendation, defendants request that "... the Honorable Judge enter an order to the Magistrate to conduct a new hearing considering defendant's answer to complaint and allegations and to conduct any [sic] evidentiary hearing in which defendants be granted the opportunity to present the evidence". (*Id.* at 4) That is not sufficient.

Defendants have failed to satisfy the procedural requirements of Fed.R.Civ.P. 72(b) and Local Rule 72(d) by not addressing the specific portions of the Report and Recommendation that they are now "objecting" to. Thus, they failed to identify any issue for this court to consider and has further waived their right to appellate review. *Velez–Padro v. Thermo King De Puerto Rico, Inc.,* 465 F.3d 31, 32 (1st Cir.2006) ("Conclusory objections that do not direct the reviewing court to the issues in controversy do not comply with Rule 72(b).") (internal citations omitted); *see also U.S. v. Lugo Guerrero,* 524 F.3d 5, 14 (1st Cir.2008)

The court's review of the record finds no clear error of law or fact in the magistrate judge's Report and Recommendation. Accordingly, magistrate judge's findings and recommendations is **ADOPTED** as the opinion of the court.

Accordingly, plaintiff's motion for the issuance of a preliminary injunction is **GRANTED.**

**IT IS SO ORDERED.**

*MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION*

JUSTO ARENAS, United States Chief Magistrate Judge.

This matter is before the court on motion for temporary restraining order and/or preliminary injunction filed by plaintiff Total Petroleum Puerto Rico Corporation, also known as Gasolinas de Puerto Rico Corporation ("Total/GPR"). (Docket No. 2, at 1, June 6, 2008.) Total/GPR is the owner and franchisor of the gasoline service station at the center of this controversy, located at Road 153 Km. 12.3, Las Flores Ward, Coamo, Puerto Rico. (Docket No. 1, at 3–4, ¶ 10.) Defendants are the franchisee of the gas station, Marisely Colón–Colón, and her husband, Luis F. Colón. (*Id.* at 4, ¶¶ 11 & 12.)

Plaintiff seeks to have defendants "immediately surrender to GPR the gasoline service station object of this case, including all the equipment and the Underground Storage Tanks therein located, during the pendency of this case, and [to instruct] Defendants to immediately comply with all the post-termination covenants of the agreements between the parties." (Docket No. 2, at 1.)

Having considered the evidence presented at the evidentiary hearing, the arguments of the parties and for the reasons set forth below, I recommend that this court GRANT plaintiff's request for a preliminary injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 6, 2008, Total/GPR filed a verified complaint against Marisely Colón–Colón, her husband Luis F. Colón and the conjugal partnership between them (collectively "defendants"). (Docket No. 1.) Total/GPR states that defendant Marisely Colón–Colón was a franchisee who was leasing from Total/GPR the use of real property; that she also had a Commoda-

tum Agreement to use certain equipment and storage tanks; and that she had a supply agreement with Total/GPR to buy and resell their products along with the use of the Total/GPR trademarks, all to operate a gas station. (*Id.* at 4–10.) Although Luis F. Colón "is not the designated franchisee or gasoline retailer he is included as defendant given his active role in the overall business operation of the station and the fact that he interferes in all communications between plaintiff and the designated retailer." (*Id.* at 4–5, ¶ 12.) Total/GPR refers to the defendants in a collective manner to ease the drafting of documents, not to designate Luis F. Colón as a franchisee. (*Id.* at 5, ¶ 12.) Total/GPR alleges "trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) [known as the Lanham Trademark Act of 1946]; and for trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)." (Known as the Federal Trademark Dilution Act of 1995.) (Docket No. 1, at 2, ¶ 3.) Furthermore, supplemental jurisdiction is also asserted over state claims as well as jurisdiction under the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801–09. (Docket No. 1, at 1, ¶ 1.)

In the verified complaint, plaintiff states that the lease agreement with defendants for the use of the real property began on March 1, 1993. (*Id.* at 5, ¶ 15, citing Docket No. 1–2, Ex. 1.) Defendants leased this property from Total/GPR, the owner, "in order to operate a gasoline service station," and said purpose was expressly stated in the lease. (Docket No. 1–2, Ex. 1, at 1.) This original lease agreement was to last three years, ending February 28, 1996. (*Id.* Ex. 1, at 2.)

The lease agreement states that defendants were to pay Total/GPR a monthly

rent, based on the station's gasoline sales volumes, of two cents ($0.02) per gallon of product sold. (*Id.*) However, the monthly rent was never to be less than the minimum monthly rent established for each year of the contract as delineated: (1) for the first year, a minimum monthly rent of seven hundred dollars ($700); (2) for the second year, a minimum monthly rent of seven hundred fifty dollars ($750); and (3) for the third year, a minimum monthly rent of eight hundred dollars ($800). (*Id.*)

The lease provides that in the event that defendants failed to comply with any of their duties under the agreement, GPR was entitled to terminate the lease. (*Id.* at 3.) The lease further authorizes GPR to terminate the agreement under circumstances including, but not limited to: breach of contract; failure to make best effort to comply with the provisions of the agreement; failure to pay amounts owed; failure to operate the gasoline service station for seven (7) consecutive days or any period of time unreasonable under the circumstances; in the event of violation of GPR's trademarks; or for any termination grounds available under applicable law. (Docket No. 1–2, Ex. 1.)

The Commodatum Agreement also began on March 1, 1993 and had a duration of three (3) years, to end February 28, 1996. (Docket No. 1–2, Ex. 2, at 17, ¶ 5.) Under this agreement, defendants were granted the right to use all equipment and underground storage tanks. (*Id.* ¶ 3.) The agreement expressly recognized that all of the property subject to the Commodatum Agreement belonged to Total/GPR and could only be used for the storage and sale of petroleum products under the Total/GPR marks. (*Id.*) The Commodatum agreement provides that, in the event of a termination, Total/GPR would be entitled to repossess the equipment being used under the Commodatum Agreement. (*Id.* at 17–18.)

Also beginning and ending on the same dates as the two agreements above, Total/GPR and defendants had a supply agreement under which defendants were given the right to buy and resell Total/GPR products and to operate a gasoline service station under such trademark. (Docket No. 1–2, Ex. 3, at 22.) After the end date, the supply agreement was renewable on a month to month basis. (*Id.* at 23.) The supply agreement states that defendants would only use the Total/GPR trademarks, registered marks, names, service distinctions and/or color patterns that Total/GPR may authorize them to use as part of the operation of the gasoline service station. (*Id.* at 28.) The agreement further states that should defendants fail to comply with any of their duties under the agreement, Total/GPR was entitled to suspend the delivery of petroleum products and terminate the agreement. (*Id.* at 29.) Other occurrences that would allow Total/GPR to terminate said agreement include, but are not limited to: breach of contract; failure to make best effort to comply with the agreement's provisions; failure to comply with any and all applicable environmental laws and regulations; violation of Total/GPR's trademarks; or for any termination grounds available under applicable law. (*Id.* at 25–26.)

"At the end of the original three year term of the Lease [and the coinciding agreements,] the parties began negotiations to renew the franchise based on a minimum monthly rent of eight hundred and fifty dollars ($850.00)." (Docket No. 1, at 12, ¶ 44.) Total/GPR claims that, despite refusing to renew the lease, defendants have nevertheless continued to occupy the property and have limited their payments to two cents ($0.02) per gallon of product bought from Total/GPR, below the agreed minimum rent. (*Id.*)

On November 13, 1998, defendants filed a judicial complaint before the Puerto Rico Court of First Instance, Ponce Superior Part, claiming that Total/GPR has been overcharging them on rent since 1991 as per the Rules and Regulations of the Puerto Rico Department of Consumer Affairs ("DOCA") (in Spanish DACO). (*Id.* ¶ 45.) However, on January 16, 2003, defendants filed a petition with DOCA requesting an establishment of the proper monthly rent, pursuant to Regulation No. 2758. (*Id.* at 13, ¶ 47.) The case was dismissed by the Puerto Rico Court of First Instance on January 19, 2005, pending DOCA's determination as to the correct amount of monthly rent that could be charged of the defendants. (*Id.* at 12, ¶ 46.)

On February 23, 2006, DOCA issued a resolution declaring the monthly rent to be two thousand two hundred and forty five dollars ($2,245), to be paid retroactively since January 2002. (*Id.* at 13, ¶ 49, citing Docket No. 1–3, at 5, Ex. 6, DOCA's resolution.) The defendants filed a petition for review in the Puerto Rico Appellate Court claiming DOCA had violated its own regulation in fixing the above rent price (which was "far greater than the eight hundred and fifty dollars ($850.00) monthly rent that GPR proposed to Defendants in order to renew the lease"). (Docket No. 1, at 13, ¶¶ 49–50.)

On December 18, 2007 the Puerto Rico Appellate Court issued a judgment reversing DOCA's resolution, and instructed DOCA "to fix the payable rent by reference to the acquisition cost of the property and not its market value." (*Id.* ¶ 51.) Plaintiff Total/GPR states that while said administrative proceeding is pending, defendants have failed to pay the minimum rent agreed to and set forth in the lease agreement. (*Id.* ¶ 52.)

Total/GPR further claims that throughout the parties' business relationship, "[d]efendants have repeatedly breached their essential obligations under the Lease, Commodatum and Supply Agreements." (*Id.* at 14, ¶ 54.) In support of this claim, Total/GPR has submitted several letters between the parties and payment and rent details. (*Id.*) Total/GPR contends that defendants are in default and owe in excess of $71,833.51 to Total/GPR. (*Id.* ¶ 55.) After several fruitless attempts to collect the money owed and renegotiate the franchise agreement, Total/GPR informed defendants that they had a final fifteen (15) days to pay amounts owed, at which point Total/GPR would be "willing to renew the franchise agreement." Defendants "never answered the letter." (*Id.* at 15–16, ¶¶ 57–64.)

Due to defendants' "repeated failure to pay GPR the sums owed under the Lease, failure to pay amounts owed for products sold and delivered and for other reasons therein cited", Total/GPR sent defendants a written notice of termination of the franchise relationship, effective immediately, on June 5, 2008. (*Id.* at 16–17, ¶ 65.) Despite this notice and Total/GPR's specific request that defendants turn over the station, defendants continue to "retain possession over the gasoline station, refuse to pay the outstanding amounts owed to GPR, and continue to sell non-GPR petroleum products from the gasoline service station." (*Id.* at 17, ¶ 67.)

Total/GPR alleges that defendants continue to use the Total/GPR marks and/or colors in a way that is "causing confusion or mistake and is deceiving consumers as to the origin, the licensing, and the endorsing by GPR of Defendant's operation of the gasoline service station." (*Id.* at 18, ¶ 74.) Accordingly, Total/GPR claims that these actions constitute "trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)." (*Id.* at 19, ¶ 75.)

GPR further contends that defendants' acts "tend to represent falsely that Defendants' services and products are legitimately approved by GPR which constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." (*Id.* ¶ 80.)

Additionally, defendants attempted to cover some of the Total/GPR marks on the service station with various materials, "resulting in a dilapidated appearance of said station," while still having the color pattern characterizing Total/GPR stations. (*Id.* at 20, ¶ 83.) Total/GPR argues that having the station appear in this "negative" manner constitutes trademark dilution, disparagement, tarnishment and diminishment of the Total/GPR trademarks as barred by Section 43(c) of the Lanham Act. (*Id.* ¶ 84.)

Plaintiff Total/GPR invokes the Petroleum Marketing Practice Act ("PMPA") to support the termination. (*Id.* at 21, ¶ 92.) Article 102(c)(8) of the PMPA specifically includes "failure by the franchisee to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled" as justification for termination of a franchise relationship. (*Id.* at 22, ¶ 94, emphasis omitted.) Although the PMPA ordinarily requires ninety (90) day written notice to the franchisee of a termination or non-renewal, it allows for a lesser period when ninety days is unreasonable under the circumstances. (*Id.* ¶ 95.) Additionally, the PMPA also provides for the "non-renewal or termination of a franchise relationship for the failure to agree to changes or additions to the franchise relationship." (*Id.* ¶ 96.) In light of the circumstances, Total/GPR argues that their termination notice should be "declared valid, legal and enforceable, effective as of the termination date, and in compliance with the applicable provisions of the P.M.P.A." (*Id.* at 23, ¶ 98.) Despite the termination notice, defendants have refused to surrender the service station, un-derground storage tanks and other equipment, and are currently using the station and the aforementioned equipment for the storage and sale of non-Total/GPR petroleum products. (*Id.* ¶ 99.)

Total/GPR alleges that all of defendants' aforementioned acts have caused injury and damages of such a nature that cannot be adequately compensated by an award of monetary damages. (*Id.* ¶ 100.) Total/GPR further asserts that it lacks an adequate remedy at law for all of its losses, and that it will continue to suffer irreparable damages unless defendants are "enjoined by this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure." (*Id.* ¶ 101.)

Consequently, Total/GPR filed a "Motion for Temporary Restraining Order and/or Preliminary Injunction." (Docket No. 2, June 6, 2008.) Plaintiff based this motion on the statement of facts in the "Verified Complaint" filed on the same date and the accompanying exhibits. (*Id.* at 2.) On June 9, 2008, Total/GPR's request for a temporary restraining order was denied, and the case was referred to me to hold a hearing on the preliminary injunction requested, and to issue a report and recommendation. (Docket No. 5.) In the motion for temporary restraining order and preliminary injunction, Total/GPR argued that irreparable injury will result if a preliminary injunction is not issued:

> GPR has no adequate remedy to avoid the total destruction of more than a decade of presence in one of Puerto Rico's competed gasoline markets nor the unauthorized use of its trademarks and property, and there is no remedy at law for such harm.

(Docket No. 2, at 24, ¶ 2.) Furthermore, Total/GPR argued that "the continued exhibition of GPR MARKS after the termination of the franchise results in the tarnishment of the aforementioned marks."

(*Id.* at 25, ¶ 4.) A show cause hearing on the matter of preliminary injunction was set for June 24, 2008.

On June 20, 2006, defendants filed a "Motion in Compliance with Order to Show Cause." (Docket No. 13.) In said motion defendants made the argument, among others, that plaintiff Total/GPR brought this action to the Federal Court in "bad faith obligating defendants to litigate this matter in three different forums, the Administrative Agency, State Court and now in the Federal Court after an adverse judgment in the Puerto Rico Appellate Court." (*Id.* at 5–6, ¶ 19.) Defendants further suggest that Younger abstention should guide the court from issuing the injunction because of the existing proceedings before DOCA. Additionally, defendants argue that the court should not issue a preliminary injunction because there was not adequate notice to defendants, Total/GPR has no risk of immediate or irreparable injury, because they have been paying and "plaintiff received without protest payments for rents and gasoline purchase since [the beginning of litigation] to the present." (*Id.* at 8, ¶¶ 26–28.)

At the evidentiary hearing held on June 24, 2008, plaintiff presented the testimony of Félix Fernando Bermúdez who has worked for Total/GPR since January 1990, first as sales representative for government accounts, then sales manager, and later network manager. He is now the real estate manager. As sales manager, he would oversee franchises and sales representatives and performed collection efforts, as well as general supervision. As real estate manager, he conducts new business, including collections for rentals, gasoline, fuel products, lubricants.

Mr. Bermúdez is familiar with the gas station in this case. Total/GPR purchased the gas station in the 80s and the Total/GPR trademark has existed since the 80s. He noted that the Coamo market is important as it is a growing municipality. The defendant Marisely Colón–Colón has been their dealer since 1993.

Mr. Bermúdez identified various exhibits during his testimony. He described the Commodatum Lease, Exhibit 1, as concerning the gasoline pumps, underground storage tanks, and usage under GPR. The dealer monitors the pumps and tanks on a daily basis while the company is responsible for them. Under paragraphs 3 and 4 of the contract, the defendants have to verify equipment since plaintiff does not have access to the underground storage tanks. The defendant used the tanks but does not use them at the present. Mr. Bermúdez made reference to Exhibit 2, the lease agreement entered into on March 1, 1993, noting that the lessee would pay a rent equivalent to $0.02 for each gallon of fuel sold monthly in the gasoline station, but never less than the minimum rent agreed. Because of the low sales, the defendant has not been paying the minimum rental for the last ten years. Exhibit 3 reflects a three-year lease agreement entered into in March 1993. Mr. Bermúdez was told by a sales representative that he had a customer in the south that owed a rent debt of around $20,000, and other debts of $11,000. Mr. Bermúdez learned of the situation in 2000. The defendant complained at the renewal contracts in 1997 about the rental issue. Mr. Bermúdez scheduled a visit to Marisely Colón–Colón at the station, to try and solve the matter. Mr. Bermúdez testified that Ms. Colón–Colón said she would not pay until DOCA's opinion regarding certain regulations (including the matter of her rental). (Exhibits 4, 5, 6.) Exhibit 7 is a summary of the debt dated November 7, 2002 totaling $38,656. Mr. Bermúdez testified that regardless of DACO she had to pay the minimum rental which she still owes. While plaintiff had wanted to renew the contract, it now wants to terminate the

same since the defendant would not sign a renewal until DOCA established the correct rental rate. In a letter dated December 21, 2008 (actually 2007), Ms. Colón–Colón was asked for full payment in 90 days of $80,161.30, in accordance with the Petroleum Marketing Practices Act. (Exhibit 8.) In Exhibit 9, she replied that she was waiting for DOCA regulations in order to pay the rent, and that she needed that information to negotiate a new lease agreement. On March 24, 2008, in a letter from plaintiff's sales manager, Ms. Colón–Colón was given 15 days to pay the debt, which included rentals, gasoline, and lubricants. (Exhibit 10.) There was no response to this letter. Mr. Bermúdez went to the station on June 5, 2008 to present a letter signed by the sales manager announcing the termination and non-renewal and instructing her to surrender the station by the following day. (Exhibit 11.) The defendant was not at the station. Mr. Bermúdez visited the station several times on that date and at 5:00 P.M. he left the letter with an employee. Mr. Bermúdez left messages on Ms. Colón–Colón's telephones relating the content of the letter and instructing her to surrender the station the next day. On June 6, 2008, Ms. Colón–Colón's husband called and said she would not surrender the station. Ms. Colón–Colón was told she could not use plaintiff's mark, and was not allowed to use plaintiff's equipment because she was terminated. On June 23, 2008, Mr. Bermúdez went to the service station. The building was open but the station was not selling gasoline. There was a sign reading: NO GASOLINA. (Exhibit 12.)

On cross-examination, Mr. Bermúdez admitted to entering into a stipulation at DOCA regarding DOCA's decision, which was still pending. An appellate court had sent the case back to DOCA, with instructions to the agency to consider the defendant's argument regarding the rent.

Mr. Bermúdez was not aware of collection efforts and was presented with copies of checks payable to Total Petroleum. (I.D.A.) There were copies of eight monthly checks beginning in August 2007 and the last one being May 2008. Defense counsel proffered that these amounts were received by plaintiff and not protested. Mr. Bermúdez testified he did not know if these monies were received but repeated that Ms. Colón–Colón still owed rental money. The defendants presented no witnesses at the evidentiary hearing.

On June 24, 2008, this court instructed Total/GPR to file a memorandum of law addressing the issue of Younger abstention in regards to the existing administrative proceeding before DOCA. Total/GPR filed the memorandum on June 25, 2008. (Docket No. 18.) Therein, Total/GPR argues that since the lease was terminated by the franchisor in accordance with the PMPA, the DOCA proceeding is moot and there is therefore no need for abstention. (*Id.* at 8.)

Defendants responded on June, 27, 2008. (Docket No. 22.) In their response, defendants argue the DOCA proceeding was not moot because plaintiff did not terminate in compliance with PMPA regulations, and was acting in bad faith. (*Id.* at 3, ¶¶ 7–10.) Defendants reiterate their request that Younger abstention be applied to stay the present action until state proceedings become final. (*Id.* at 5.)

## II. DISCUSSION

A. *Validity of the Termination under PMPA*

Congress enacted the PMPA in part to lessen the unequal bargaining power between franchisors and franchisees. *See Marcoux v. Shell Oil Prods. Co. LLC,* 524 F.3d 33, 39 (1st Cir.2008) (quoting S.Rep. No. 95–731, 95th Cong., 2d Sess. 18, 1978

U.S.Code Cong. & Admin. News 873, 876; citing *Four Corners Serv. Station v. Mobil Oil Corp.,* 51 F.3d 306, 310 (1st Cir.1995)). "Because franchisees claimed that this unequal power was often wielded through arbitrary or discriminatory termination or nonrenewal, or threats of termination or nonrenewal, the PMPA aimed to remove this potent weapon from the franchisors' arsenal." *Marcoux v. Shell Oil Prod. Co. LLC,* 524 F.3d at 39 (citing S.Rep. No. 95–731, at 17). It attempts to level the playing field by delineating and confining the grounds upon which a franchisor can terminate the relationship with the franchisee. *Id.* (citing S.Rep. No. 95–731, at 18).

As a result, the PMPA lists several reasons that would allow the franchisor to validly choose not to renew the franchise agreement. *See Esso Standard Oil Co. v. Monroig–Zayas,* 445 F.3d 13, 18 (1st Cir. 2006). Under 15 U.S.C. § 2802(b)(2)(C), a franchisor may base a termination and nonrenewal on "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable...." These include "failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise...." 15 U.S.C. § 2802(b)(3)(A). The PMPA includes as one such event the "failure by the franchisee to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled[.]" 15 U.S.C. § 2802(c)(8). In negotiating any changes or additions to the franchise agreement, the franchisor must have acted (1) "in good faith and in the normal course of business" and (2) not for the purpose of "preventing the renewal of the franchise relationship." 15 U.S.C. § 2802(b)(3)(A)(i)(ii).

■ As shown by Exhibits 4, 5, and 8–14, defendants have repeatedly avoided negotiating the terms of the lease and failed to meet their obligations under the lease agreement. Furthermore, the exhibits submitted by Total/GPR show that plaintiff continually tried to negotiate and continue the relationship. Plaintiff finally presented the termination and nonrenewal notice giving the defendant a day to vacate the premises. (Exhibit 11.)

Since plaintiff did not give the requisite ninety (90) days notice required by section 2804(a)(2), the termination would have to comply with section 2804(b)(1)(B) to be valid. Plaintiff has not started another franchise in defendants' stead; plaintiff has complied with the requirements of section 2804(c), in that the notification was in writing, was posted by certified mail, and contained all the necessary provisions. (See Docket No. 1, at 17, ¶ 66.) Mr. Bermúdez testified as to the extraordinary effort he conducted to serve the defendant personally on June 5, 2008. Therefore, plaintiff has satisfied the requirements of section 2804 and in turn has satisfied section 2802(b)(1)(A).

It remains to be determined if plaintiff has satisfied the requirements of sections 2802(b)(1)(B) and (b)(2). Under section 2802(b)(2)(C), a franchisor may base termination or nonrenewal on "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise is reasonable...." 15 U.S.C. § 2802(b)(2)(C). Section 2802(c)(8) includes one of the qualifying events as "failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled[.]" 15 U.S.C. § 2802(c)(8). The above referenced exhibits show that plaintiff meets the requirements of this particular provision of the PMPA. While the defendants present evidence of payments, they do not present any evidence to reflect that the payment is for rent under the

contract, meaning the agreed to rent, thus the PMPA violation. Furthermore, the failure to operate the station, as well as trademark violations by the franchisee are events which justify termination of the franchise agreement by the franchisor.

Since plaintiff's evidence satisfies the regulations of the PMPA for terminating a contract, such termination is presumed to be reasonable, and the termination of the contract was valid. *See Desfosses v. Wallace Energy, Inc.,* 836 F.2d 22, 26 (1st Cir.1987).

## B. *Younger Abstention*

■■■ "In the absence of extraordinary circumstances, interests of comity and the respect for state processes demand that federal courts should abstain from interfering with ongoing state judicial proceedings." *Esso Standard Oil Co. v. López–Freytes,* 522 F.3d 136, 143 (1st Cir.2008) (citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). Although originally pertaining only to state criminal actions, the abstention doctrine has since been broadened to apply to state-level, quasi-judicial, administrative proceedings such as the one in this case. *Id.* (citing *Maymó–Meléndez v. Álvarez–Ramírez,* 364 F.3d 27, 31 n. 3 (1st Cir.2004) (enumerating the various applications of the Younger doctrine)). The commonly applied rule is that as long as the state proceeding contains " 'no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain.' " *Id.* (quoting *Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. at 435, 102 S.Ct. 2515). Said extraordinary circumstances have included matters where " 'core constitutional values are threatened during an ongoing state proceeding and there is a showing of

irreparable harm that is both great and immediate.' " *Id.* (quoting *Maymó–Meléndez v. Álvarez–Ramírez,* 364 F.3d at 37).

However, as DOCA itself made clear in another case, "any rent proceedings pending before DOCA would be moot once a franchise had been properly terminated under the PMPA, and such proceedings would come to a halt." *Esso Standard Oil Co. v. Dep't of Consumer Affairs,* 793 F.2d 431, 433 (1st Cir.1986). Furthermore, while the franchisee might petition DOCA for a rental rate, it could also clearly face the possibility of not receiving the franchise. *Id.* Defendants' argument that this court should abstain from issuing a preliminary injunction because of the existing DOCA proceedings lacks merit.

Defendants correctly points out that the PMPA requires that plaintiff's negotiations must have been made in good faith and in the ordinary course of business. (Docket No. 22, at 3, ¶ 9.) However, " 'good faith' requirements requires merely that a franchisor not act 'with evil motive or discriminate[ ] selectively against franchisees[.]' " *Esso Standard Oil Co. v. Dep't of Consumer Affairs,* 793 F.2d at 432 (quoting *Palmieri v. Mobil Oil Corp.,* 529 F.Supp. 506, 511 (D.Conn.1982)). If this allows for abuse by franchisors in their demands, " 'the legislature may decide to regulate the franchise relationship more closely, but the PMPA as enacted does not vest the courts with authority to review the objective reasonableness ... of each franchise agreement.' " *Esso Standard Oil Co. v. Dep't of Consumer Affairs,* 793 F.2d at 433 (quoting *Palmieri v. Mobil Oil Corp.,* 529 F.Supp. at 511). While the defendant might argue that plaintiff has shown bad faith in this termination, there is no evidence of skullduggery or bad faith in plaintiff's decision to terminate the franchisee. Already unhappy with a DOCA determination as to what the rental rate should be,

the defendants have continued the administrative process until an unknown resolution leads to an unknown result. DOCA Regulation 2758 referred to by the parties contains a detailed process about negotiating rent but if such negotiations should fail, nothing stops the franchisor from terminating the franchise, as done here, as long as the requirements of the PMPA are met. *Id.* at 433. It is clear that the DOCA proceedings are inadequate for plaintiff to enforce its highly regulated rights under PMPA, while the defendant continues to seek an elusive bargaining chip. Thus the court should not abstain under *Younger*.

### C. Preliminary Injunction

Plaintiff seeks that defendants "immediately surrender the station, the Underground Storage Tanks, and all the equipment therein to GPR, to immediately comply with all other post-termination covenants of the Lease, Dealer and Commodatum Agreements, and to refrain from using the GPR MARKS [sic]." (Docket No. 2, at 34, ¶ 2.)

The First Circuit uses a quadripartite test for determining whether litigants are entitled to preliminary injunction redress. Under this framework, trial courts must consider "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir.1996) (citing *Weaver v. Henderson*, 984 F.2d 11, 12 & n. 3 (1st Cir.1993); *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir.1991)); *see also Ocean Spray Cranberries, Inc. v. PepsiCo, Inc.*, 160 F.3d 58, 60–61 (1st Cir. 1998); *DeNovellis v. Shalala*, 135 F.3d 58,

62 (1st Cir.1998); *Telerep Caribe, Inc. v. Zambrano*, 146 F.Supp.2d 134, 137 (D.P.R. 2001).

### (1) LIKELIHOOD OF SUCCESS ON THE MERITS

To determine the likelihood of plaintiff's success on the merits of the claim, the court must examine the claims under both the PMPA and the Lanham Act.

#### a. PMPA

■ As already discussed above, plaintiff's allegations include a valid termination of the contract under the PMPA, and the demand of the return of the property and equipment in possession of the defendants, who continue to use the GPR marks. The defendants are obliged to comply with all of the post-termination obligations under the agreements to which they are a part, including the surrender of the premises, thus depriving plaintiff of a federally-protected right to its property. They have not so complied. Therefore, there is a substantial likelihood of plaintiff succeeding on the merits of its claims under the PMPA.

#### b. FTDA AND THE LANHAM ACT

Total/GPR claims that defendants are using the GPR marks, representing themselves as a GPR franchise, and are promoting and advertising their business with the GPR marks. (Docket No. 1, at 18, ¶ 73.) Plaintiff further claims that such actions are causing confusion or mistakes among consumers as to the origin, licensing and endorsing by Total/GPR of defendants' operation of the gasoline service station. (*Id.* ¶ 74.) In pertinent part, the FTDA states:

(c) Dilution by blurring; dilution by tarnishment

(1) Injunctive relief

Subject to the principles of equity, the owner of a famous mark that is distinc-

tive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c).

Neither party disputes that Total/GPR's marks are recognizable and distinctive. Total/GPR states that it has been developing its market presence in the area for fifteen years. (Docket No. 2, at 23, ¶ 3.) Additionally, defendants have attempted to cover some of the Total/GPR marks on the service station with various materials, "resulting in a dilapidated appearance of said station," while still having the color pattern characterizing Total/GPR stations. (Docket No. 1, at 20, ¶ 83.)

■ In trademark infringement cases, the movant must show that prospective buyers/clients are "likely to be confused as to the product's source." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 43 (1st Cir.1998). "[T]he law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir.1996.)

In examining the likelihood of confusion, the First Circuit focuses on eight factors: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark. . . . No one factor is necessarily determinative, but each must be considered.

*I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d at 43 (quoting *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 29 (1st Cir.1989)).

■ First, the similarity of the marks and the similarity of goods inquiry are the same. The franchisee has continued to use the trademark of the franchisor, and may also be using it to identify goods that are not of the same quality or source than those previously identified with the Total/GPR marks. There is no evidence that consumers had any notice that the franchise relationship was terminated, or that the right to sell goods sold under that trademark has been lost. The continued use of the Total/GPR marks and/or colors can cause consumers to buy products in reliance on the misused trademark.

As far as similarity is concerned, since the parties are offering "virtually the same goods . . . 'under this factor, there is a strong likelihood of confusion.'" *Boston Athletic Ass'n v. Sullivan*, 867 F.2d at 30 (quoting *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir.1987)).

■ The next three factors are treated together as a practice in this circuit. *Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 3 n. 3 (1st Cir.1993) (citing *Boston Athletic Ass'n v. Sullivan*, 867 F.2d at 30; *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d at 818; *Pignons S.A. v. Polaroid Corp.*, 657 F.2d 482, 488 (1st Cir.1981)). Plaintiff and defendants operate in the same trade. The classes of prospective purchasers are identical. The same customers that have used the station since its start as a GPR station are the same customers defendants hope to attract. "Few harms are more corro-

sive in the marketplace than the inability of a trademark holder to control the quality of bogus articles thought (erroneously) to derive from it." *Hypertherm, Inc. v. Precision Prod., Inc.*, 832 F.2d 697, 700 (1st Cir.1987).

While the plaintiff did not provide any proof of actual confusion, consumer confusion appears likely: consumers have no real notice of the fact that the gasoline service station is no longer a Total/GPR station.

■ Regarding intent, defendants have covered or tried to cover the GPR marks, which could evidence a lack of intent to infringe or misuse the Total/GPR marks. However, "[s]trictly, intent, or lack thereof, does not affect the eyes of the viewer." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d at 44 (quoting *Chrysler Corp. v. Silva*, 118 F.3d 56, 59 n. 3 (1st Cir.1997)). Given the high likelihood of consumer confusion, the court finds that defendants' apparent lack of intent to infringe on Total/GPR's trademarks by unsuccessfully veiling some of the marks cannot overcome the fact that they are relying on Total/GPR's marks and colors to attract customers.

Finally, in order to evaluate a mark's relative strength the First Circuit has used the following factors: "the length of time a mark has been used and the plaintiff's relative renown in its field; the strength of the mark in plaintiff's field of business ... and the plaintiff's actions in promoting its mark." *Boston Athletic Ass'n v. Sullivan*, 867 F.2d at 32 (internal citations omitted). Total/GPR has owned their trademarks for a significant length of time, and the marks are easily identifiable in its field of business. Defendants simply have no right to use plaintiff's marks.

After examining the above factors, the likelihood of confusion of plaintiff's trademark is very high, and therefore, plaintiff has demonstrated likelihood of success on the merits.

### (2) SIGNIFICANT RISK OF IRREPARABLE HARM

■ Plaintiff contends that irreparable harm will result absent an injunction because (1) there is no adequate remedy at law for the harm to its reputation in the area; (2) Total/GPR has been prevented from exercising its right to use the gasoline service station and use it for commercial gain; (3) Total/GPR cannot monitor the tanks and equipment to ensure compliance with environmental standards; difficulty of proving damages; and (4) because of the trademark harms discussed earlier. (Docket No. 2, at 25.)

■ An injury will only be considered irreparable if no adequate remedy for the injury exists at law. *See Foxboro Co. v. Arabian Am. Oil Co.*, 805 F.2d 34, 36 (1st Cir.1986); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1, at 149–51 (2d ed.1995). Monetary damages are generally not considered irreparable injuries. *See DeNovellis v. Shalala*, 135 F.3d at 64 ("[A] temporary loss of income which may be recovered later does not usually constitute irreparable injury."). It is not necessary for plaintiff to establish that denial of injunctive relief would be fatal to its business; it is sufficient for plaintiff to show that injury is not accurately measurable, given that irreparable harm is a natural sequel. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d at 19 (citing e.g., *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir.1989)). Evaluating irreparable harm and its likelihood of success on the merits must be considered together. The greater the likelihood of success on the merits, the less required showing of irreparable harm. "[W]hen the likelihood of success on the merits is great,

a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief." *E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 743 (1st Cir.1996).

Plaintiff has made a requisite showing that without the preliminary injunction it would lose incalculable revenues and sustain harm to its goodwill. *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d at 19. The incalculable damage is lost revenues, harm to plaintiff's reputation, and alienation of future customers. "By its very nature injury to goodwill and reputation is not easily measured or fully compensable in damages." *Id.* at 20 (citing *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d at 915).

Defendants' continued occupation of plaintiff's property and use of its equipment deprives plaintiff of the ability to make productive use of this particular site. In the absence of an injunction, plaintiff would face substantial risks through its immediate inability to properly monitor and exercise control over the underground storage tanks, pumps, and related equipment at the site. A denial of injunction would expose plaintiff to general liability, and in particular, liability regarding environmental regulations. These issues are enough to show that the plaintiff would suffer irreparable harm absent an injunction before a court ruling on plaintiff's claims.

### (3) BALANCE OF HARDSHIPS

 "Weighing the hardships of each party is a fact-driven exercise." *Telerep Caribe, Inc. v. Zambrano*, 146 F.Supp.2d at 145. While defendants will suffer the hardship of ceasing operations until a ruling has been made in this case, defendants do not have the right to use the Total/GPR property, storage tanks, equipment or trademarks in violation of the terminated franchise agreement. The real damage to Total/GPR's reputation is great, and will only increase with time, during which defendants' possession of plaintiff's premises is contrary to law. Trademark law is designed to "quickly and easily assures a potential customer that *this* item-the item with this mark-is made by the same producer as other similarly marked items that he or she liked (or disliked) in the past." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (emphasis in the original). Whether intentionally or not, defendants' actions are harmful to both consumers and plaintiff. Plaintiff has presented evidence and argument in relation to the balancing test. Aside from the Younger based argument, and copies of cancelled checks which do not provide evidence of rental payment under the lease agreement, the defendants have presented nothing. The defendants possess a gasoline service station which by definition sells gasoline, and in this case, GPR's gasoline. This gasoline service station sells no gasoline. NO GASOLINA. For these reasons, the balance of hardships leans in favor of plaintiff.

### (4) PUBLIC INTEREST

 The public interest weighs heavily in plaintiff's favor. Not only is plaintiff's trademark being harmed, but any potential customer who relies on the strength of Total/GPR's trademarks and quality of product is being erroneously induced into purchasing petroleum products from this particular gas station, which no longer sells gasoline as of this writing. Furthermore, the continued possession by a lessee of a property after the lease has been validly terminated is contrary to the public interest, in this particular case more so since such possession includes underground gasoline storage tanks. Such tanks require strict testing, record keeping, monitoring, and sampling and plaintiff cannot delegate its liability for soil contam-

ination or violation of environmental laws under the circumstances.

### III. CONCLUSION

This is not a case which suggests or welcomes abstention based upon principles of comity and federalism. Plaintiff has shown that it is likely to prevail on the merits based upon defendants' violations of the Petroleum Marketing Practices Act, the Federal Trademark Dilution Act, and the Lanham Act. Plaintiff's injury cannot be accurately measurable under the circumstances and such injury continues each day it does not have possession of the gasoline service station which no longer sells its gasoline. Were the court to decide that somehow the injury is repairable, or measurable, the strength of likelihood of success would yet carry controlling weight. Plaintiff has presented evidence as to what hardship it is experiencing with the current condition of the service station and the violations of law. The defendant would suffer the normal results of someone who is no longer running an operation under the contractual obligations agreed to. Finally, the public interest is not served by trademark harm, misleading customer inducement, and the ignoring of contractual obligations.

For the foregoing reasons, I recommend that the court should GRANT plaintiff's motion for the issuance of a preliminary injunction as follows:

Defendants Marisely Colón–Colón, Luis F. Colón, their agents, employees, and assignors are directed to (1) immediately surrender the gasoline service station known by the initials GPR located at Road 153, Km. 12.3 in Las Flores Ward of Coamo, Puerto Rico, to include the station, the underground storage tanks, and all equipment located in such premises belonging to plaintiff; (2) immediately comply with all post-termination covenants of the Lease, Supply and Commodatum Agreements to which the defendants are signatories; (3) immediately cease using the well-known GPR marks.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).

July 30, 2008.